IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| PATRICIA ALBARADO, ERICA BARRERA Individually, and ANF of D.R., Minor; MICHAEL BROWN, Individually and ANF Of V.B.; JENNIFER DAVIS, Individually and ANF of Z.D., Minor; ANGELI ROSE GOMEZ, Individually and ANF of G.B. and A.G., Minors; LUZ HERNANDEZ., Individually and ANF of N.J., Minor; CARLA ROSE KING; TIFFANY LUNA, Individually and ANF of A.P., Minor; TAMICA MARTINEZ, Individually and ANF of R.D., Minor; TIFFANY MASSEY; YOLANDA MORALES, Individually and ANF of Z.G., Minor; NICOLE FAYE OGBURN; MARY ANN REYES, Individually and ANF of A.S. and A.S., Minors; BIANCA RIVERA, Individually and ANF of G.R., Minor; JENNIEKA RODRIGUEZ; SAMANTHA RODRIGUEZ, CHRISTIAN and BRENDA SONORA, Individually, and ANF of V.S.; DAVID TREVINO, Individually and ANF of A.T., I.T., & D.T., Minors; KRYSTAL UPTON, Individually and ANF of J.T. and B.T., Minors; ESMERALDA VELASQUEZ, Individually and ANF of C.V., Minor; SOFIA ZAPATA, Individually and ANF of M.S., Minor *Plaintiffs* | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| v. | § § | CIVIL ACTION NO. ___2-24-cv-00068___ |
| DANIEL DEFENSE, LLC, a Limited Liability Company; DANIEL DEFENSE, INC. a Georgia Corporation; OASIS OUTBACK, LLC, a Texas Limited Liability Company; FIREQUEST INTERNATIONAL, INC., an Arkansas Corporation; and FLASH CO., INC., a Colorado Company, *Defendants*. | § § § § § § § § § § | |

**DANIEL DEFENSE, LLC f/k/a DANIEL DEFENSE, INC.'S NOTICE OF REMOVAL**

1

167897

COMES NOW Daniel Defense, LLC f/k/a Daniel Defense, Inc. ("Daniel Defense"), defendant in a cause styled: No. 2024-05-35537-CV*; Patricia Albarado et al v. Daniel Defense, LLC, Daniel Defense, Inc., Oasis Outback, LLC, Firequest International, Inc., and Flash Co., Inc.*; in the 38th District Court, Uvalde County, Texas and, pursuant to the terms and provisions of 28 U.S.C. §§ 1441(a) and 1446(b), hereby files this Notice of Removal of said cause to the United States District Court for the Western District of Texas, Del Rio Division.  As grounds for removal, Daniel Defense respectfully shows the Court as follows:[1]

## I.
## NATURE OF THE CASE AND BASIS FOR REMOVAL

Plaintiffs originally filed this lawsuit on May 21, 2024.  This lawsuit arises out of the May 24, 2022 shooting at Robb Elementary School.  Plaintiffs sue Defendants allegedly connected to the manufacture and sale of the rifle, and other components, used in the shooting.  Plaintiffs assert various claims against Defendants and request actual and exemplary damages.  *See* Ex. A-2 (Plaintiffs' Petition).[2]

Plaintiffs' process server served Daniel Defense on June 3, 2024 at its office.

The basis for removal is diversity jurisdiction.  The only ground for defeating diversity jurisdiction is the presence of Defendant Oasis Outback, LLC ("Oasis Outback") who is alleged to be a Texas limited liability company.  Ex. A-2, ¶ 2.23.  As shown below, however, Plaintiffs

---

[1] Daniel Defense attaches as Exhibit A to this Notice of Removal its Index of Matters Being Filed that includes a docket sheet of the underlying state court action and all pleadings, motions and orders filed in the state court action. A copy of the Certificate of Interested Persons and Rule 7.1 Disclosure Statement is attached as Exhibit B.

[2] Plaintiffs in this case previously filed a lawsuit in this Court against the same defendants here – Cause No. 2:23-CV-00028.  Plaintiffs alleged *subject matter jurisdiction* based on the Protection of Lawful Commerce in Arms Act (15 U.S.C. § 7901 *et seq.*) (the "PLCAA").  Doc. 1, ¶ 2.1.  Oasis Outback filed a Rule 12(b)(1) motion to dismiss noting the PLCAA does not confer subject matter jurisdiction.  Doc. 44, p. 4-8.  Subsequently, the Court voluntarily dismissed the lawsuit without prejudice on March 27, 2004.  Doc. 52.  Daniel Defense removes this case on the basis of *diversity jurisdiction due to the improper joinder* of Oasis Outback.  Thus, the Court has jurisdiction at the time of removal.

improperly joined Oasis Outback, and there is complete diversity between Plaintiffs and the remaining Defendants.  Additionally, removal is not precluded by the "forum-defendant rule."

Daniel Defense timely removes this case within 30 days of it being served.

Pursuant to 28 U.S.C. § 1441, Daniel Defense removes this action to the District Court of the United States for the district and division embracing the county where this state court action is pending.

Daniel Defense will serve written notice of the removal on Plaintiffs and a copy will be filed with the Uvalde County District Clerk promptly after this Notice of Removal is filed.

This case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because Daniel Defense satisfied the procedural requirements for removal.  And as demonstrated below, this Court has subject matter jurisdiction over this diversity action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and the only properly joined parties are citizens of different states.

## II.
## DIVERSITY JURISDICTION

In support of this Notice, Daniel Defense shows that because: (1) the amount in controversy exceeds $75,000.00, and (2) Plaintiffs and all the Defendants (apart from the improperly joined Oasis Outback) are citizens of different states, there is complete diversity of citizenship.  Thus, removal is proper because the diversity requirements are met, this removal is filed within thirty (30) days of receiving service of suit, and it has been less than one year since this action was originally commenced.  *See* 28 U.S.C. § 1446(b)-(c).

### A.    The amount in controversy exceeds $75,000.00.

Plaintiffs allege they seek damages in excess of $1,000,000.00   Ex. A-2, ¶ 3.4. Accordingly, the amount in controversy requirement is satisfied.

167897

**B.    There is complete diversity between Plaintiffs and all Defendants apart from improperly joined Oasis Outback.[3]**

Plaintiffs allege they all reside in Texas.  Ex. A-2, ¶¶ 2.1-2.20.

Defendants Daniel Defense, LLC f/k/a Daniel Defense, Inc. represents it is a limited liability company organized in the State of Georgia.  The sole member of Daniel Defense, LLC is Daniel Defense, Holdings, LLC which is a limited liability company organized in the State of Georgia.  The members of Daniel Defense Holdings, LLC are M.C. Daniel Group, Inc., Marty Daniel, and Servant Foundation d/b/a The Signatry. M.C. Daniel Group, Inc. is a corporation organized in Georgia with its principal place of business in Georgia.  Marty Daniel is an individual who is domiciled in Georgia.  Servant Foundation d/b/a The Signatry is a corporation organized in the State of Missouri with its principal place of business in Kansas.  As of the date this lawsuit was filed, and the date of removal, no member of Defendant Daniel Defense, LLC or Daniel Defense Holdings, LLC is a citizen of Texas.  Ex. C.

Plaintiffs allege Defendant Firequest International, Inc. is an Arkansas corporation with its principal place of business in Arkansas.  Ex. A-2, ¶ 2.24.

Plaintiffs allege Defendant Flash Co., Inc. is a Colorado corporation with its principal place of business in Colorado.  Ex. A-2, ¶ 2.25.

**C.    Oasis Outback is improperly joined and, thus, its citizenship is not considered.**

Plaintiffs allege Oasis Outback is a Texas limited liability company with its principal place of business in Uvalde, Texas.  Ex. A-2, ¶ 2.23.  According to publicly available records, at least

---

[3] "[D]iversity of citizenship must exist *both* at the time of filing in state court *and* at the time of removal to federal court."  *Ashford v. Aeroframe Services, L.L.C.*, 907 F.3d 385, 386 (5th Cir. 2018) (italics in original); *see In re Levy*, 52 F.4th 244, 246 (5th Cir. 2022) (same); *Waterbridge Tex. Operating, LLC v. Petro Guardian, LLC*, No. 23-CV-00034-DC-DF, 2024 WL 1580199, at *4 (W.D. Tex. Apr. 11, 2024), report and recommendation adopted, No. 23-CV-00034-DC, 2024 WL 1994261 (W.D. Tex. May 6, 2024) (same).

167897

one member of Oasis Outback is a Texas citizen.  Ex. D.[4]  However, because Plaintiffs have

improperly joined Oasis Outback, complete diversity remains, and the Court has jurisdiction over

this matter.

### 1.    The standard for improper joinder.

In *Smallwood*, the Fifth Circuit reaffirmed the two ways to establish improper joinder,

including:

> "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the
> plaintiff to establish a cause of action against the non-diverse party in state
> court."  Only the second way is before us today, and we explained in *Travis
> v. Irby* that the test for fraudulent joinder is whether the defendant has
> demonstrated that there is no possibility of recovery by the plaintiff against
> an in-state defendant, which stated differently means that there is no
> reasonable basis for the district court to predict that the plaintiff might be
> able to recover against an in-state defendant. ***To reduce possible confusion,
> we adopt this phrasing of the required proof and reject all others***, whether
> the others appear to describe the same standard or not.

*Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*) (emphasis added); *see

Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024) (same); *Advanced Indicator &

Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 473 (5th Cir. 2022) (same); *Mimosa Properties, LLC

v. Third Coast Ins. Co.*, No. DR-22-CV-008–AM/CW, 2023 WL 11691700, at *3 (W.D. Tex. Mar.

31, 2023) (same); *Morris v. De Luna*, No. DR-20-CV-025-AM-VRG, 2021 WL 2980715, at *2-3

(W.D. Tex. Feb. 4, 2021), report and recommendation adopted, 2021 WL 2981301 (W.D. Tex.

Mar. 18, 2021) (same).

Under the second prong, the standard is whether the defendant has demonstrated that there

is ***no reasonable basis*** to predict that the plaintiff might be able to recover against the in-state

defendant.  "[A] removing defendant [need not demonstrate an absence of *any possibility* of

---

[4] The managing member of Oasis Outback is WRK, Inc., a Texas corporation with its principal place of business in Uvalde. *Id.*

recovery in state court] . . . the defendant must demonstrate only that there is *no reasonable basis* for predicting that the plaintiff will recover in state court." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004) (emphasis in original); *Advanced Indicator & Mfg., Inc..*, 50 F.4th at 473; *Morris*, 2021 WL 2980715, at *2-3. A "mere theoretical possibility of recovery under local law" will not preclude a finding of improper joinder. *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2000); *Smallwood*, 385 F.3d at 573, n. 9; *Morris*, 2021 WL 2980715, at *3.[5]

To determine whether there is a reasonable basis to recover under state law, under the second prong, the Fifth Circuit outlined two separate methods.

> There has also been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law. A court may resolve the issue in one of two ways. ***The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant***. . . . That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (emphasis added). Daniel Defense briefly discusses the standards for each method.

---

[5] In considering whether a plaintiff has a reasonable basis for recovery on at least one claim under state law, the district court is limited to the causes of action and allegations asserted in the petition on file at the time of the removal. "Post-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999); *see Ayala v. Enerco Group, Inc.*, 569 Fed. Appx. 241, 245 (5th Cir. 2014) (same); *Barrera v. Allstate Ins. Co.*, No. DR-16-CV-0037-AM-VRG, 2017 WL 3274469, at *7 (W.D. Tex. Mar. 6, 2017), report and recommendation adopted, 2017 WL 3274357 (W.D. Tex. Mar. 21, 2017) (same).

167897

### a.      Improper joinder based on a Rule 12(b)(6) analysis.

When considering improper joinder, federal pleadings standards apply.  *International Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016); *Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018);  *Morris*, 2021 WL 2980715, at *3.  *Twombly* and *Iqbal* provide the parameters for federal pleading standards.

First, the district court should identify and disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*") (emphasis added);  *see also Rios v. City of Del Rio,* 444 F.3d 417, 420-21 (5th Cir. 2006) (explaining that pleadings must contain either direct allegations on every material point necessary to sustain a recovery or else contain allegations from which an inference fairly may be drawn that sufficient evidence will be introduced at trial); *see Cook v. City of Tyler*, 402 F.Supp.3d 339, 341 (E.D. Tex. 2019), *appeal dismissed sub nom.*, 974 F.3d 537 (5th Cir. 2020) (stating "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("In order to avoid dismissal for failure to state a claim, however, *a plaintiff must plead specific facts, not mere conclusory allegations*.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (emphasis added).  Stated simply, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Next, the district court "consider[s] the factual allegations in [the plaintiffs'] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681; *Moini v. Univ. of Tex. at Austin*, No. A-10-CA-180-SS, 2011 WL 90472, at *12 (W.D. Tex. Jan. 10, 2011).

### b.  Improper joinder based on piercing the pleadings.

A summary inquiry is appropriate when the face of the pleadings appears to support joinder, but certain jurisdictional facts are misstated or omitted. *Smallwood*, 385 F.3d at 573.  In such cases, the court has the discretion to pierce the pleadings and conduct a summary inquiry in order "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*. at 573-74; *see also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir. 1981) (evidentiary hearing appropriate where removing party contends plaintiff's pleadings contain misrepresentations of jurisdictional fact).  Summarily stated:

> . . . where a plaintiff has stated a claim but "misstated or omitted discrete facts that would determine the propriety of joinder," a court may pierce the pleadings and conduct a summary inquiry considering summary judgment-type evidence to determine whether a plaintiff has a reasonable possibility of recovery in state court.

*Figueroa v. Gen. Motors Corp.*, No. EP07CV297PRM, 2008 WL 4372700, at *3 (W.D. Tex. Sept. 15, 2008); *see also Badon v. RJR Nabisco, Inc.*, 224 F.3d at 390; *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992) ("A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties.").

The removing party may submit evidence outside the pleadings in order to establish that a plaintiff has no reasonable basis to expect recovery from the resident defendant.  *Badon v. RJR Nabisco, Inc.*, 224 F.3d at 390.  For example, a defendant may submit affidavits and deposition transcripts in support of its removal petition.  *B., Inc.*, 663 F.2d at 549; *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).  District courts may consider summary judgment-type

167897

evidence to identify "discrete facts" that would show that a defendant was improperly joined. *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 Fed. Appx. 911, 915-916 (5th Cir. 2009).

### 2.     Oasis Outback is improperly joined.

Complete diversity does not exist if Oasis Outback is properly joined.  Plaintiffs assert claims against Oasis Outback for "negligent transfer and sale," "marketing defect," and violation of the Texas Deceptive Trade Practices Act.  Ex. A-2, ¶¶ 5.1-5.14, 5.20-5.24. 5.25-5.30.  But, as shown below, Plaintiffs have no reasonable probability of recovering against Oasis Outback on these claims and, thus, it is improperly joined.

When a plaintiff's pleadings demonstrate than an in-state defendant is immune from suit, courts will hold such defendants as improperly joined and deny requests to remand.  *See Odar v. Felix Energy Holdings II LLC*, No. PE:21-CV-00079-DC-DF, 2022 WL 1115407, at *8–9 (W.D. Tex. Apr. 12, 2022), report and recommendation adopted, 2022 WL 1514644 (W.D. Tex. May 13, 2022) (concluding in-state defendant was improperly joined and diversity jurisdiction remained when petition demonstrated in-state defendant was immune from claims under the Texas Worker's Compensation Act); *Sanchez v. Wells Fargo Bank, N.A.*, No. SA-20-CV-188-XR, 2020 WL 2086549, at *2–3 (W.D. Tex. Apr. 30, 2020) (holding in-state defendant was improperly joined when plaintiff's allegations demonstrated attorney immunity); *L'Amoreaux v. Wells Fargo Bank, N.A.*, No. A-13-CV-052-LY, 2013 WL 12098738, at *1–2 (W.D. Tex. July 15, 2013), aff'd sub nom., 755 F.3d 748 (5th Cir. 2014) (finding improper joinder when in-state defendant had attorney immunity from plaintiff's claims); *see also Esparza v. Paragon Shipping, Inc.*, No. 2:13-CV-289, 2013 WL 6835239, at *5–7 (S.D. Tex. Dec. 23, 2013) (denying motion to remand and concluding in-state defendant (a government entity) was improperly joined because plaintiff's petition failed to demonstrate waiver of governmental immunity).

167897

Plaintiffs have no reasonable probability of recovery against Oasis Outback because their claims against it are barred under by the Protection of Lawful Commerce in Arms Act (15 U.S.C. § 7901 *et seq.*) (the "PLCAA") and no applicable exception applies.  Additionally, and regardless of the PLCAA, Plaintiffs' claims against Oasis Outback independently fail under Texas law. Accordingly, Oasis Outback is improperly joined, and its presence does not preclude diversity jurisdiction.

   a.   **Plaintiffs' claims against Oasis Outback are qualified actions under the PLCAA.**

In Section 7902 of the PLCAA, "Prohibition on bringing of qualified civil liability actions in Federal or State court," Congress prohibited bringing any "qualified civil liability actions" in federal or state court.

   **(a) In general**

   A *qualified civil liability action* may not be brought in any Federal or State court.

   **(b) Dismissal of pending actions**

   A qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending.

15 U.S.C. § 7902 (bold italics added).

In Section 7903(5)(A), Congress defined a "qualified civil liability action" as well as *six exceptions* to such an action.

   The term "qualified civil liability action" *means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party*, but shall not include--

**(i)** an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

**(ii)** an action brought against a seller for negligent entrustment or negligence per se;[6]

**(iii)** an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including--[7]

> **(I)** any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

> **(II)** any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

**(iv)** an action for breach of contract or warranty in connection with the purchase of the product;

**(v)** an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

---

[6] There is no exception for ordinary negligence claims. *Id.*

[7] In the PLCAA caselaw, this exception is referred to as the "predicate exception."

> **(vi)** an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

15 U.S.C. § 7903(5)(A) (emphasis added).  Thus, if an action meets the definition of a "qualified civil liability action," it is barred unless an exception is established.

The PLCAA clearly prohibits civil actions against manufacturers and sellers for actual and punitive damages, injunctive or declaratory relief, as well as "other relief."  *Id.*  The statute provides immunity from suit as the Texas Supreme Court explained in *Academy*.

> "By its terms, the Act bars plaintiffs from courts for the adjudication of qualified civil liability actions, allowing access for only those actions that fall within the Act's exceptions."  ***The PLCAA thus "immunizes a specific type of defendant from a specific type of suit" and "bars the commencement or the prosecution of qualified civil liability actions.***"

*In re Academy, Ltd.*, 625 S.W.3d 19, 35 (Tex. 2021) (quoting *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397–398 (2d Cir. 2008)) (emphasis added); *see Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (stating the PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims").

With respect to their claims against Oasis Outback, Plaintiffs' petition satisfies all five elements of a "qualified civil liability action."  ***First***, the petition is indisputably a "civil action or proceeding" because it is a lawsuit filed in state court.  ***Second***, the action is brought by multiple people –Plaintiffs.  ***Third***, the petition is brought against the seller of a qualified product.  *See* Ex. A-2 ¶ 4.43 (alleging Oasis Outback sold firearms to the Assailant); *id.*, ¶ 5.3 (same).[8]  ***Fourth***, Plaintiffs seek actual and exemplary damages from Oasis Outback.  *Id.*, ¶ 6.12.  ***Fifth***, Plaintiffs'

---

[8] The PLCAA defines a "seller" to include: "(B) a dealer (as defined in section 921(a)(11) of Title 18) who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18," and "(C) a person engaged in the business of selling ammunition (as defined in section 921(a)(17)(A) of Title 18) in interstate or foreign commerce at the wholesale or retail level."  15 U.S.C. § 7903(6)(B)-(C).

claims against Daniel Defense result from "the criminal or unlawful use of a qualified product by" a "third party." *Id.*, ¶ 4.12 (stating Assailant killed 19 children, two teachers, and wounded many others).

Plaintiffs' action against Oasis Outback is within the PLCAA's definition of a "qualified civil liability action." Thus, Plaintiffs' have no reasonable probability of success against Oasis Outback, and it is improperly joined, unless Plaintiffs can adequately plead a statutory exception. As shown below, Plaintiffs cannot plead a viable exception.

> **b.     Plaintiffs' petition raises three possible PLCAA exceptions as to Oasis Outback.**

Plaintiffs' petition gives rise to the following potential exceptions to immunity:

- Negligent entrustment,

- Predicate exceptions based on the alleged sale of a firearm to a person under 18 and violation of the DPTA, and

- Negligence per se based on alleged sale of a firearm to a person under 18 and violation of the DPTA.[9]

*See* Ex. A-2, ¶¶ 4.41, 4.62, 4.63, 5.8, 5.9.

However, each of these alleged exceptions fails as a matter of law. Therefore, Plaintiffs have no reasonable probability of avoiding PLCAA immunity and recovering against Oasis Outback, and it is improperly joined.

> **c.     The negligent entrustment exception does not apply as a matter of law.**

The PLCAA creates an exception for an action brought against a seller for negligent entrustment. 15 U.S.C. § 7903(5)(A)(ii). The statute further defines "negligent entrustment" as

---

[9] Plaintiffs do not assert a cause of action for negligence per se. *See* Ex. A-2, p. 35-42 (causes of action). However, in their fact section, Plaintiffs state Oasis Outback "was negligent in failing to follow the law and surely of negligence per se." *Id.*, ¶ 4.42.

"the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." *Id*. at § 7903(5)(B).

Plaintiff expressly invokes this exception as to Oasis Outback and asserts a cause of action for it labeled as "negligent transfer." *See* Ex. A-2, ¶ 4.62 (stating Oasis Outback "knew or should have known the shooter was likely to, and did, use the products in a manner involving unreasonable risk of physical injury to others. *See.* 15 U.S.C. § 7903(5)(B); *id.* at ¶ 5.8 (alleging in "negligent transfer" claim that Oasis Outback knew or should have known Assailant intended to use firearms and ammunition to kill people).

While the PLCAA recognizes negligent entrustment as an exception to immunity, it does not create a cause of action. 15 U.S.C. § 7903(5)(C) (PLCAA does not create "public or private cause[s] of action or remed[ies]."); *Academy*, 625 S.W.3d at 30. "Accordingly, courts generally apply state law on negligent-entrustment claims in evaluating whether the exception applies." *Id.*; *see also Timperio v. Bronx-Lebanon Hosp. Ctr.*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (plaintiff must satisfy state law requirements for exception to apply); *Phillips v. Lucky Gunner, LLC*, 84 F.Supp.3d 1216, 1225 (D. Colo. 2015) ("Although the PLCAA identifies negligent entrustment as an exception to immunity, it does not create a cause of action. Accordingly, the claim arises under state law.").

Texas does not recognize a negligent entrustment action against the seller of a product. *Nat'l Convenience Stores, Inc. v. T.T. Barge Cleaning Co.*, 883 S.W.2d 684, 687 (Tex. App—Dallas 1994, writ denied) ("[W]e find negligent entrustment does not apply to the sale of a chattel."); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 304 (Tex. App.—Houston [1st Dist.] 1999, pet.

14

denied); *Allen v. Wal-Mart Stores, LLC*, 2017 WL 978702, *11 (S.D. Tex. Mar. 14, 2017) (collecting cases).

The Texas Supreme Court recently affirmed this principle.  In *Academy*, the Court rejected an argument that the PLCAA's negligent entrustment exception applied to Academy's sale of a gun to a mass shooter (at Sutherland Springs) because Academy allegedly "supplied the rifle to [the shooter] with reason to know that he was likely to use it in a manner involving unreasonable risk of harm." *Academy*, 625 S.W.3d at 30.  The Texas Supreme Court instructed: "[N]o viable cause of action exists under Texas law for negligent entrustment based on a sale of chattel. In turn, we hold that the plaintiffs may not rely on the negligent-entrustment exception to pursue their claims." *Id.* at 30.

Similar allegations are at issue here, and the result must be the same.  *See* Ex. A-2 at ¶ 4.62 (stating Oasis Outback "knew or should have known the shooter was likely to, and did, use the products in a manner involving unreasonable risk of physical injury to others . . .).  In line with the holding of *Academy*, no viable cause of action exists for negligent entrustment (or sale/transfer) of a chattel in Texas.  Consequently, the negligent entrustment exception cannot apply to Plaintiffs' claims against Oasis Outback.

> **d.**     **Plaintiffs cannot rely on a violation of 18 U.S.C. § 922(b)(1) as the basis for either a predicate exception or negligence per se because the Assailant was 18 when he legally purchased the rifle.**

The Gun Control Act prohibits a licensed dealer or manufacturer from selling a rifle to a person the licensee "knows or has reasonable cause to believe is less than eighteen years of age . . . ." 18 U.S.C. § 922(b)(1); *see McRorey v. Garland*, No. 7:23-CV-00047-O, 2023 WL 5200670, at *1 (N.D. Tex. Aug. 14, 2023) (stating same).  Plaintiffs' petition takes inconsistent positions with respect to whether Oasis Outback sold any firearm or ammunition to the Assailant before he

turned 18. On the one hand, Plaintiffs allege "Oasis Outback sold the AR-15 rifles and ammunition to [the Assailant] just days ***after*** his 18th birthday." *See* Ex. A-2, ¶ 5.8 (emphasis added); *see id.*, ¶ 5.3. On the other hand, Plaintiffs allege that due to the "deliberate choices of the gun makers and sellers to directly market their lethal weapons to young untrained civilians, the [Assailant] bought and assembled a military grad assault weapon with 30-round magazines days ***before*** his 18th birthday . . . ." *Id.*, ¶ 4.2 (emphasis added). Plaintiffs' affirmative allegation that Oasis Outback sold the firearms and ammunition to the Assailant when he was 18 negates any claim for a violation of Section 922(b). Nevertheless, if Plaintiffs contend Oasis Outback violated Section 922(b) and argue it as a basis for a predicate exception or negligence per se exception, such exceptions fail because the Assailant was 18 years old when he purchased the subject firearm from Daniel Defense – and Plaintiffs know this.

Among the documents the Court may consider in deciding this motion are documents incorporated into the complaint by reference and matters of public record. *Salas v. United States*, 667 F. Supp. 3d 380, 385 (W.D. Tex. 2023); *Buitron v. AEP Tex., Inc.*, No. DR-21-CV-067-AM-VRG, 2022 WL 17732345, at *2 (W.D. Tex. Aug. 1, 2022), report and recommendation adopted, No. DR-21-CV-67-AM, 2022 WL 17732715 (W.D. Tex. Aug. 18, 2022). Throughout their petition, Plaintiffs cite to and rely upon the Report of Texas House of Representatives' Investigative Committee on the Robb Elementary Shooting. *See* Ex. A-2, p. 24, n. 15-16, p. 25, n. 18, p. 28, n. 19 (citing and quoting H.R. Robb Comm. Interim Report on the Robb Elementary Shooting (July 17, 2022)) (the "House Report").[10] But the House Report shows the Assailant purchased the Subject Firearm from Daniel Defense ***after he turned 18***. According to the House

---

[10] The House Report is publicly available at the Texas House of Representatives website: https://house.texas.gov/_media/pdf/committees/reports/87interim/Robb-Elementary-Investigative-Committee-Report.pdf.

167897

Report, the Assailant was born on May 16, 2004 (and thus turned 18 on May 16, 2022).  House Report at 29.  Prior to turning 18, the Assailant asked family members to buy firearms for him, but they refused.  *Id.* at 72. The House Report discusses text messages he exchanged in the days leading up to his 18th birthday, and states he purchased his first firearm after his birthday.

> After the attacker sent a picture of the rifle he intended to buy—to great approval their discussion continued just ***after his birthday when he made his first gun and ammo purchases*** . . . .

*Id.* at 37 (emphasis added).

The Court may consider the House Report in deciding this motion because Plaintiffs repeatedly reference it in support of their allegations, and it is a matter of public record.  *Salas*, 2023 WL 2753895, at *2.  Having chosen to rely on the House Report to support their claims, Plaintiffs cannot overlook those parts of the House Report that disprove their claims.  The House Report establishes the Assailant purchased the Subject Firearm ***after turning 18*** and, thus, the sale was legal.  House Report at 37; 18 U.S.C. § 922(b)(1).  Accordingly, Plaintiffs cannot rely upon a nonexistent violation of Section 922(b)(1) as the basis for invoking either the PLCAA's predicate exception or negligence per se exception.

> **e.      Plaintiffs' DTPA claim cannot serve as a basis for either a predicate exception or a negligence per se exception.**

Plaintiffs assert a claim against Oasis Outback based on the Texas Deceptive Trade Practices Act.  Ex. A-2, ¶¶ 5.25-5.30.  Plaintiffs do not expressly argue that a violation of the DTPA can serve as either the basis for a predicate exception or negligence per se exception under the PLCAA.  Regardless, Texas' DTPA cannot satisfy the negligence per se exception or the predicate exceptions as a matter of law.

"Negligence per se tort claims are established when a plaintiff shows that a defendant, without excuse, violates a statute or ordinance setting an applicable standard of care if the statute

is designed to prevent an injury to that class of persons to which the injured party belongs." *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  Texas law is clear that "the DTPA facially does not establish an applicable standard of care for imposing liability based on negligence per se." *Id.* at 166.  Therefore, any claimed violation of the Texas DTPA cannot satisfy the negligence per se exception. *Id.* ("Any presumed violation of the DTPA here does not constitute negligence per se sufficient to establish liability."). *Boales'* holding squarely prevents Plaintiffs from relying on the DTPA for purposes of satisfying the negligence per se exception.

Nor does any claimed violation of the DTPA satisfy the predicate exception.  To satisfy the predicate exception, a plaintiff must show that a defendant knowingly violated a state or federal statute that "appli[es]" to the "sale or marketing of [firearms]."  15 U.S.C. § 7903(5)(A)(iii). Again, *Boales* is controlling, and its holding prevents Plaintiffs from relying on the DTPA for purposes of the predicate exception. The DTPA is a comprehensive consumer-protection plan establishing its own penalties.  *Boales*, 29 S.W.3d at 166. It does not establish a generally applicable standard of care for imposing liability based on the theories set forth here, including for purposes of satisfying the predicate exception.  *See id.*

Equally problematic, Plaintiffs do not allege any "knowing" violation of the DTPA or other facts sufficient to support a DTPA violation and satisfy the predicate exception. *See generally* Ex. A-2 ¶¶ 5.25-5.30; *see also infra* at § II(C)(2)(f) (listing reasons why Plaintiffs fail to state a DTPA claim for which relief may be granted).

Even if Plaintiffs had pleaded a "knowing" violation of the DTPA, the DTPA is a statute of general applicability.  The context of the Section 7903(5)(A)(iii) and the PLCAA demonstrate that the predicate exception applies only to laws specifically regulating the commercial sale of arms,

167897

and not to general commercial statutes.  Congress provided examples in the text of the predicate exception.  *See United States v. Williams*, 553 U.S. 285, 294 (2008) ("a word is given more precise content by the neighboring words with which it is associated.").  All are firearms-specific.  15 U.S.C. § 7903(5)(A)(iii)(I)-(II).  Legislative history also makes clear that Congress enacted PLCAA to immunize firearm manufacturers and sellers against claims of negligent, unfair, or deceptive advertising.  H.R. Rep. No. 109-124, at 6 n. 1, 7 n.15, 8-9 n. 36, 11 n.48 (2005) (citing several cases as examples of the lawsuits Congress intended to preclude).[11]  Congressional testimony further confirms this.  Senator Hatch specifically identified lawsuits "citing deceptive marketing" as among those that concerned Congress and would be precluded by PLCAA. 151 Cong. Rec. 18,073 (2005).  And, in enacting the PLCAA, Congress noted with disapproval that various "[l]awsuits ha[d] been commenced" seeking to hold firearms companies liable for "harm caused by the misuse of firearms" by third parties." 15 U.S.C. § 7901(a)(3).  A broader reading of Section 7903(5)(A)(iii) would allow the exact claims Congress sought to bar when it enacted the PLCAA.

The Ninth Circuit has concluded that the predicate exception cannot be interpreted to "cover[] all state statutes that could be applied to the sale or marketing of firearms." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135-1138 (9th Cir. 2009) ("The purpose of the PLCAA leads us to conclude that Congress intended to preempt general tort law claims such as Plaintiffs', even though California has codified those claims in its civil code.").  The Second Circuit reached the same

---

[11] *McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366, 369 (S.D.N.Y. 1996) (negligent advertising), aff'd sub nom., 119 F.3d 148 (2d Cir. 1997); *People v. Arcadia Machine & Tool, Inc.*, No. 4095, 2003 WL 21181117, at *7 (Cal. Super. Ct. Apr. 10, 2003) (advertising-based claims under California's Unfair Competition Law), aff'd sub nom. *In re Firearm Cases*, 24 Cal. Rptr. 3d 659, 663-664, 667-668 (Cal. Ct. App. 2005) (improper and deceptive marketing); *Ganim v. Smith & Wesson Corp.*, No. CV 990153198S, 1999 WL 1241909, at *1 (Conn. Super. Ct. Dec. 10, 1999) (deceptive advertising and unfair sales practices claims under CUTPA). Aff'd 780 A.2d 98 (Conn. 2001); *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1247 (Ind. 2003) (deceptive advertising); *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *3 (Mass. Super. Ct. July 13, 2000) (false advertising).

conclusion, explaining that the predicate exception cannot refer to all general laws that are "capable of being applied," because that would make the exception "far too[]broad." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008) (cert. denied) (considering PLCAA context and holding "the term "applicable to" to mean statutes that clearly can be said to regulate the firearms industry more accurately reflects the intent of Congress."). It "would allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by firearms that were lawfully distributed into primary markets." *Id.*; *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1137 (D. Nev. 2019).

The text, structure and context of the PLCAA demonstrate the predicate exception does not allow claims seeking to impose liability for criminal misuse of firearms based on the creative use of generally applicable laws like negligence and consumer-protection statutes, because those are the types of claims Congress intended to foreclose through the PLCAA.

Texas' DTPA is a statute of general applicability, and it does not meet the narrow exception Congress recognized through Section 7903(5)(A)(iii).

### f. Plaintiffs fail to plead a viable DTPA claim against Oasis Outback.

Assuming, *arguendo*, that the DTPA can generally serve as the basis for either a predicate exception or a negligence per se exception, Plaintiffs' DTPA claim against Oasis Outback still does not waive PLCAA immunity because Plaintiffs fail to plead a cognizable DTPA violation under Texas law.

The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices. TEX. BUS. & COM. CODE § 17.50(a)(1). The DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE § 17.45(4). To succeed on a DTPA claim, a plaintiff must show: (1) the plaintiff is a

consumer who sought or acquired, by purchase or lease, goods or services; (2) the defendant is subject to suit under the DTPA; (3) the defendant committed an act in violation of the DTPA; and (4) the defendant's purported action was a producing cause of the plaintiff's damages. *Guajardo v. JP Morgan Chase Bank, N.A.*, 650 Fed. Appx. 240, 249 (5th Cir. 2015) (citing TEX. BUS. & COM. CODE §§ 17.41–63).

Plaintiffs' DTPA claim fails for four reasons: (1) Plaintiffs are not consumers within the meaning of the statute; (2) the DTPA does not apply to personal injury claims like the ones brought in this case; (3) Plaintiffs have failed to satisfy the heightened pleading requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure; (4) Oasis Outback cannot be liable under the DTPA (or any other theory) for failing to warn that guns and ammunition are dangerous.

First, there is the issue of "consumer" status. Plaintiffs bear the burden to establish consumer status. *See Lochabay v. Sw. Bell Media, Inc.*, 828 S.W.2d 167 (Tex. App.—Austin 1992, no writ). A consumer need not be the actual purchaser or lessor of goods or services; a beneficiary of goods or services may be a consumer for purposes of the DTPA. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex. 1997). But consumer status may be extended to third parties only "as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party." *Lukasik*, 21 S.W.3d at 401; accord *Arthur Andersen*, 945 S.W.2d at 815. "The relevant inquiries to be made in determining consumer status are (1) to whom the representations were made; (2) who suffered damages from the representations; and (3) who was affected by the defendant's alleged misconduct." *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied); accord *NationsBank of Tex., N.A. v. Akin, Gump, Hauer & Feld, L.L.P.*, 979 S.W.2d 385, 392 (Tex. App.—Corpus Christi 1998, pet. denied). Texas courts have repeatedly dismissed claims under

the Texas DTPA due to lack of standing where the court finds that the plaintiff is not a consumer as a matter of law. *See Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.)); *Crawford v. Guideone Mut. Ins. Co.*, 420 F. Supp. 2d 584 (N.D. Tex. 2006).

In determining consumer status, the "focus is on the plaintiff's relationship to the transaction." *Arthur Andersen & Co.*, 945 S.W.2d at 815; accord *Bohls*, 75 S.W.3d at 479. *Lukasik* offers an example. 21 S.W.3d at 401. There, a couple who lived with their young children in a relative's home had a child who drowned in the relative's pool that did not have an alarm. The parents brought a DTPA cause of action against the pool company for failing to install a pool alarm. *Id.* at 398. The court held that the parents were not consumers and noted that (1) the parents were not involved in discussions between the pool company and the homeowner regarding a pool alarm, (2) the parents never sought to acquire the alarm, (3) the parents never independently pursued acquisition of the pool alarm, and (4) the homeowner did not request that the pool alarm specifically benefit the deceased child or his parents. *Id.* at 402. The parents lacked consumer status because they did not have the requisite relationship to the transaction to prevail on a DTPA claim. *Id.*

Plaintiffs allege they "are 'consumers' as required by the DTPA." Ex. A-2, ¶ 5.26. They are not. As the Fifth Circuit has explained:

> To qualify as a consumer, and thus to have standing to sue under the DTPA, [the claimant] must satisfy two requirements: (1) it must have sought or acquired goods or services by purchase or lease; and (2) the goods or services purchased or leased ***must form the basis of the complaint***.

*Brittan Communications Intern. Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) (citing *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex. 1981)) (emphasis added); *see Garcia v. Jenkins Babb, L.L.P.*, 569 Fed. Appx. 274, 277 (5th Cir. 2014) (same); *Carlos*

22

*Antonio Raymond v. J.P. Morgan Chase Bank*, No. SA19CA596OLGHJB, 2020 WL 10731764, at *9 (W.D. Tex. July 6, 2020), *report and recommendation adopted*, 2020 WL 10731936 (W.D. Tex. Oct. 6, 2020) (same); *see also* TEX. BUS. & COM. CODE § 17.45(4) (defining "consumer"). Stated differently, the good or service that forms the basis of the claim must be the good or service the claimant sought or acquired.

Plaintiffs did not seek or acquire the subject firearm. It is undisputed that the Assailant purchased the weapon. *See* Ex. A-2, ¶¶ 4.2, 4.5, 4.37 (stating the Assailant purchased the rifle). Plaintiffs were neither part of the transaction involving the sale or purchase of the product at issue, nor is there any allegation that Plaintiffs utilized the product at issue for their own use. Plaintiffs' connection to the transaction at issue is incidental at best, which is insufficient to confer consumer status. In short, Plaintiffs have not (1) sought or acquired by (2) purchase or lease any (3) goods or services (4) for their own use. Consequently, Plaintiffs are not "consumers" under the DTPA; they lack standing to pursue a claim under the statute; and the Court should dismiss their DTPA claim. *E.g.*, *Fernandez*, 2022 WL 20509599, at *2; *Fernandez v. H-E-B, LP*, No. SA21CA734FBHJB, 2022 WL 20509599, at *2 (W.D. Tex. Mar. 23, 2022), report and recommendation adopted sub nom., 2022 WL 20508788 (W.D. Tex. Apr. 20, 2022); *Moore v. Lakeview Loan Servicing, LLC*, No. 1:19-CV-935-LY, 2019 WL 7161607, at *4 (W.D. Tex. Dec. 20, 2019), report and recommendation adopted, 2020 WL 8115886 (W.D. Tex. Jan. 29, 2020); *Hopkins v. Green Dot Corporation*, No. 5:16-CV-365-DAE, 2016 WL 4468272, at *6 (W.D. Tex. Aug. 24, 2016).

Second, the DTPA does not recognize claims for personal injury or infliction of mental anguish, subject to two exceptions.[12] TEX. BUS. & COM. CODE § 17.49(e). Neither exception

---

[12] Section 17.49(e) of the DTPA provides that "except as specifically provided by Subsections (b) and (h), Section 17.50, nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish." TEX. BUS. & COM. CODE § 17.49(e). The DTPA does not provide relief for personal injury claims.

applies here. *Roberts v. Zev Techs., Inc.*, No. 1:15-CV-309 RP, 2015 WL 7454688, at *7 (W.D. Tex. Nov. 23, 2015) (concluding neither exception applied in case arising from accidental discharge of Glock handgun).  Plaintiffs' DTPA allegations constitute "a cause of action for bodily injury" under Section 17.49(e) and, therefore, are not allowed.  *See Last v. Quail Valley Country Club, L.P.*, No. 01-08-00759-CV, 2010 WL 1253782, at *7 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010) (Texas Legislature intended most personal injury claims to fall outside the purview of the DTPA and holding suit alleging personal injuries from mechanical bull fell outside DTPA as a matter of law).

Third, the heightened pleading requirements of Rule 9(b) apply to claims alleging violations of the DTPA.  *Ears & Hearing, P.A. v. Blue Cross & Blue Shield of Tex.*, No. 1:18-CV-00726-LY, 2019 WL 3557349 at *2, (W.D. Tex. 2019) (collecting cases).  Plaintiffs have not pleaded any facts specific to Oasis Outback on elements 3 and 4 of a DTPA claim, *e.g.* (3) that Oasis Outback, specifically, committed an act in violation of the DTPA; and (4) Oasis Outback's purported action was a producing cause of the plaintiff's damages—much less facts sufficient for Rule 9(b).

Fourth, while Plaintiffs generally complain the defendants collectively violated the DTPA because "[c]onsumers should be informed of all the substantial and unavoidable risks that come with firearm and firearm modifier ownership, possession, and use," (Ex. A-2, ¶ 5.27), no Texas court has imposed a duty to warn on manufacturers and sellers of the obvious danger of firearms. *See Keene v. Sturm, Ruger & Co.*, 121 F. Supp. 2d 1063 (E.D. Tex. 2000) (analyzing historical Texas case law and finding no instances of such a duty being imposed relative to handguns) (citing *Patterson v. Gesellschaft*, 608 F. Supp. 1206, 1209 n.7 (N.D. Tex. 1985)).  So, any allegations that Oasis Outback failed to warn of known hazards is a "misrepresentation," caused a "confusion or

---

*See Last*, 2010 WL 1253782, at *7; *DiGangi v. 24 Hour Fitness USA, Inc.*, No. 05-04-01119-CV, 2005 WL 1367945, at *2 (Tex. App.—Dallas June 10, 2005) (personal injury claims are generally barred by the DTPA).

misunderstanding" or breached a duty of disclosure fails to state a DTPA claim under Texas law.

> **g.    Plaintiffs fail to state a claim against Oasis Outback for a marketing defect.**

In addition to their claims for negligent entrustment and violation of the DTPA, Plaintiffs remaining claim against Oasis Outback is a product liability claim based on a marketing defect. Ex. A-2, ¶¶ 5.20-5.24.  This claim also fails as a matter of law, irrespective of the PLCAA, because Plaintiffs fail to allege a viable marketing defect claim.

The aim of a marketing defect claim is to impose liability where the failure to warn itself caused a product to be unreasonably dangerous. *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759 (W.D. Tex. 2020).  Texas law requires Plaintiffs to prove that: (1) a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product; (2) the product suppliers actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed; (3) the product contains a marketing defect; (4) the absence of a warning renders the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn must constitute a causative nexus in the product user's injury. *Keene v. Sturm, Ruger & Co.*, 121 F. Supp. 2d 1063, 1069 (E.D. Tex. 2000).

Sellers have no duty to warn of "open and obvious" defects in strict products liability failure-to-warn claims. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995).  And, Texas courts have unanimously determined that the law does not require sellers to warn of the obvious dangers of owning or selling a handgun. *See Keene*, 121 F. Supp. 2d at 1070 (collecting cases); *Foltz v. Smith & Wesson Corp.*, No. 3:08-CV-0858-K, 2009 WL 2596598, at *2 (N.D. Tex. Aug. 20, 2009) ("Cases applying Texas law have been unanimous in holding that there is no duty to warn of the obvious dangers of owning or selling a handgun.").  That holding is consistent with other, obvious hazards. *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex.

1991) (holding that no legal duty exists to warn of the health risks of alcohol consumption because such risks are common knowledge); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997) (health risks from smoking).  Therefore, Plaintiffs fail to state a marketing defect claim against Oasis Outback.

> **(1)    The PLCAA's product liability exception does not apply to Plaintiffs' marketing defect claim against Oasis Outback.**

Moreover, even if Plaintiffs had pleaded a marketing defect claim against Oasis Outback, it does not satisfy the PLCAA's product liability exception.  That exception permits personal injury, wrongful death, and property damage claims to go forward against firearm and ammunition manufacturers "resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner." 15 U.S.C. § 7903(5)(A)(v)(emphasis added).[13]

Product liability claims, however, are not limitless under the PLCAA. The product liability exception does not apply to actions alleging defective instructions or inadequate warnings. *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 545 (D. Ariz. 2021).  And, the product liability exception does not apply "where the discharge of the product was caused by a volitional act that constituted a criminal offense . . . ." 15 U.S.C. § 7903(5)(A)(v). Under such circumstances, the PLCAA dictates "such an act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage . . . ." *Id.*  The PLCAA, therefore, continues to bar cases in which a "volitional act," *i.e.* pulling the trigger, causes the firearm to discharge, and that act "constituted a criminal offense." 15 U.S.C. § 7903(5)(A)(v).  A "volitional act" rendering the

---

[13] Section 7903(5)(A)(v) applies only when the death, injury or property damage results "directly" from an alleged design defect or manufacturing defect. The Act does not use the word "indirectly," "partially," "concurrently" or some other limiting term. Rather it uses the term "directly," thereby expressing Congress's intent to preclude claims, such as the ones here, where creative pleading asserts a design defect claim as an alternative theory of recovery in addition to, or in lieu of, a direct action against the directly culpable parties.

167897

product liability exception inapplicable is an act that results in the discharge, not the consequence of that discharge. *Travieso*, 526 F. Supp. 3d at 548 ("the mere fact the shooter did not intentionally shoot the Plaintiff or fire the gun does not mean she did not act volitionally."); *see also Adames v. Sheahan*, 909 N.E.2d 742, 763 (Ill. 2009) (volitional act where shooting was accidental).

Section 7903(5)(A)(v) strikes a balance between allowing traditional product liability manufacturing and design defect claims to go forward while precluding those at the heart of the PLCAA – claims arising from volitional acts that are criminal in nature. Section 7903(5)(A)(v), therefore, serves the PLCAA's policy goal of protecting firearms manufacturers and sellers from product liability suits that are not a direct result of a flaw in the firearm's design or manufacture, but rather are caused by "a volitional act that constituted a criminal offense." 15 U.S.C. § 7903(5)(A)(v).

Here, Plaintiffs pleaded the Assailant committed murder. Ex. A-2, ¶ 5.2. That the Assailant's acts were voluntary, criminal, and horrific is undisputed. Because Plaintiffs' claims arise from the Assailant's criminal conduct, which is a "volitional act" for purposes of Section 7903(5)(A)(v), the product liability exception does not apply. *See Jeffries v. District of Columbia*, 916 F.Supp. 2d 42, 46 (D.D.C. 2013) (dismissing case sua sponte pursuant to PLCAA when it was "uncontroverted that a third party discharged the assault rifle, during the commission of a criminal act," where only the design defect exception could possibly apply because that "exception does not apply 'where the discharge of the product was caused by a volitional act that constituted a criminal offense.'").

**h.    Oasis Outback is improperly joined.**

Plaintiffs cannot recover against Oasis Outback. All of Plaintiffs' claims are barred by the PLCAA, and each of Plaintiffs' potential PLCAA exceptions against Oasis Outback fail as a matter

of law.  Additionally, even if the PLCAA did not exist, all of Plaintiffs' claims against Oasis

Outback fail under Texas law.  Plaintiffs cannot state a viable claim against Oasis Outback.

Accordingly, Plaintiffs have no reasonable probability of recovery against Oasis Outback, and it

is improperly joined.  All remaining Defendants are diverse from Plaintiffs.  Consequently,

diversity jurisdiction exists and removal is proper.

### 3. The forum-defendant rule is inapplicable because Oasis Outback was not properly joined.

Under the "forum-defendant rule," a suit cannot be removed if "any of the parties in interest

*properly joined and served* as defendants is a citizen of the State in which such action is brought."

28 U.S.C. § 1441(b)(2) (emphasis added).  However, "[i]mproper joinder is a limited exception to

the forum-defendant rule and the requirement of complete diversity."  *New Life Assembly of God

of City of Pampa, Tex. v. Church Mut. Ins. Co.*, No. 2:15-CV-00051-J, 2015 WL 2234890, at *3

(N.D. Tex. May 12, 2015) (citing *Cuevas v. BAC Home Loans Servicing, LP,* 648 F.3d 242, 249

(5th Cir. 2011)).  The Fifth Circuit's standard for improper joinder specifically considers whether

the in-state (forum) defendant was improperly joined to defeat diversity jurisdiction.  *See

Smallwood*, 385 F.3d at 573 (stating test for improper joinder "is whether the defendant has

demonstrated that there is no possibility of recovery by the plaintiff against an *in-state defendant*,

which stated differently means that there is no reasonable basis for the district court to predict that

the plaintiff might be able to recover against an *in-state defendant*") (emphasis added); *Cuevas*,

648 F.3d at 249 (same, quoting *Smallwood*); *African Methodist Episcopal Church v. Lucien*, 756

F.3d 788, 793 (5th Cir. 2014) (same); *see also Taylor v. Cavender Buick of Tex. Ltd.*, No. SA-16-

CV-724-XR, 2016 WL 6581353, at *1-3 (W.D. Tex. Nov. 7, 2016) (citing *Lucien* and denying

motion to remand after concluding forum defendant was improperly joined).

This Court has repeatedly denied motions to remand after finding that a Texas defendant was improperly joined and complete diversity existed. *E.g.*, *Irma Blas v. Rosen*, No. DR-18-CV-66-AM, 2019 WL 5199284, at *7 (W.D. Tex. July 16, 2019); *ALGC, Inc. v. United States Liab. Ins. Group*, No. DR-17-CV-061-AM-VRG, 2018 WL 5733184, at *9 (W.D. Tex. Aug. 17, 2018), report and recommendation adopted sub nom., 2018 WL 5733155 (W.D. Tex. Sept. 19, 2018); *Segura v. Gen. Motors LLC*, No. DR:14-CV-0077-AM/VRG, 2015 WL 13805702, at *4 (W.D. Tex. Sept. 30, 2015); *Rodriguez v. Wal-Mart Stores Tex., LLC*, No. DR-12-CV-50-AM/CW, 2013 WL 12393906, at *6 (W.D. Tex. Mar. 30, 2013). More recently, the Court confirmed the improper joinder doctrine extends to the forum-defendant rule. *Mimosa Properties, LLC v. Third Coast Ins. Co.*, No. DR-22-CV-008–AM/CW, 2023 WL 11691700, at *4 (W.D. Tex. Mar. 31, 2023).

As shown above, Plaintiffs improperly joined Oasis Outback. Accordingly, the forum-defendant rules does not apply here to preclude removal.

### III.
### ALL OTHER DEFENDANTS EITHER CONSENT
### TO REMOVAL OR HAVE NOT YET BEEN SERVED

"[A]ll defendants who have been properly joined ***and served*** must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A) (emphasis added). The consent of an improperly joined defendant like Oasis Outback is not required for removal. *Id.*; *see Mauldin v. Allstate Ins. Co.*, 757 Fed. Appx. 304, 309 (5th Cir. 2018) (stating "this court has repeatedly made clear that a removing defendant 'need not obtain the consent of a co-defendant that the removing party contends is improperly joined'"). Nevertheless, Oasis Outback consents to this removal. Ex. E.

Defendant Firequest International, Inc. consents to this removal. Ex. F.

Defendant Flash Co., Inc. has not yet been served in this case.  A removing party need not obtain the consent of a defendant who has yet to be served.  *See Cadena v. ASI Lloyds*, No. SA-17-CV-01034-FB, 2018 WL 1904839, at *4 (W.D. Tex. Jan. 5, 2018), report and recommendation adopted, 2018 WL 1899750 (W.D. Tex. Feb. 13, 2018) (stating "because Alfaro had not been properly served at the time of removal, this Court should disregard Alfaro's Texas citizenship"); *Ahmed v. ASI Lloyds*, No. SA-17-CA-00336-FB, 2017 WL 9401067, at *2 (W.D. Tex. July 7, 2017), report and recommendation adopted, No. SA-17-CA-336-FB, 2017 WL 9403301 (W.D. Tex. Aug. 30, 2017) ("At the time of removal, Tom Long had not been served. Defendants who have not been served by the time of removal need not consent."); *Boyle v. JP Morgan Chase Bank*, No. 4:13CV454, 2013 WL 6000462, at *3 (E.D. Tex. Nov. 8, 2013) ("Chase correctly asserts that a defendant not properly served need not consent to removal, and it is Plaintiff's obligation to request a citation and ensure that the citation, along with the petition is served."); *Ebert v. Wells Fargo Bank N.A.*, No. A-13-CV-805 LY, 2013 WL 12308217, at *4 (W.D. Tex. Nov. 12, 2013) (stating "the consent requirement applies only to those defendants who have been served").  With respect to Flash Co., Inc., there is no record of a return of service on file with the Uvalde County District Clerk.  Ex. A-1.  The same day this notice was filed, counsel for Daniel Defense called the Uvalde County District Clerk and confirmed there was no record on file showing Defendant Flash Co., Inc. had been served.  Accordingly, Flash Co., Inc.'s consent to removal is not required.

## IV.
## DANIEL DEFENSE'S NOTICE OF REMOVAL IS TIMELY

Because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between Plaintiffs and all Defendants (apart from improperly joined Oasis Outback), Daniel Defense is entitled to remove this case to the United States District Court for the Western District of Texas, Del Rio Division.  Removal is timely sought because Daniel Defense filed this

167897

notice within thirty (30) days of Daniel Defense receiving service of suit on June 3, 2024.  *See* 28 U.S.C. § 1446(b); FED. R. CIV. P. 6(a)(1)(C).  Additionally, it has been less than one year since this action was originally commenced.  *See* 28 U.S.C. § 1446(c).

## V.
## CONCLUSION

For the reasons stated above, Daniel Defense, LLC f/k/a Daniel Defense, Inc. respectfully removes this action now pending against it from the 38th Judicial District Court, Uvalde County, Texas, to this Honorable Court for trial and determination of all issues.

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
E-mail:  dprichard@prichardyoungllp.com

David R. Montpas
State Bar No. 00794324
E-mail: dmontpas@prichardyoungllp.com

Prichard Young, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

***COUNSEL FOR DEFENDANT,***
***DANIEL DEFENSE, LLC F/K/A***
***DANIEL DEFENSE, INC.***

167897

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June 2024, I served the following counsel of record through electronic service as authorized by the Federal Rules of Civil Procedure:

Justin L. Williams                                    Via CM/ECF
Sean Williams
Ryan Williams
Danila Ramos
WILLIAMS ATTORNEYS, PLLC
500 N. Water Street, Suite 500
Corpus Christi, TX 78401

Mark A. Di Carlo                                      Via CM/ECF
MARK A. DI CARLO, PLLC
722 Elizabeth Street
Corpus Christi, Texas 78404

                                        */s/ David M. Prichard*
                                        David M. Prichard

167897